UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ALLEN[1] REED, and
ANTHONY WESLEY, Jr.,

    *Plaintiffs*,

v.

CHRIS SWANSON, and
BRIAN D. MACMILLAN,

    *Defendants*.
_____/

CASE NO. 5:21-cv-11392

DISTRICT JUDGE JUDITH E. LEVY
MAGISTRATE JUDGE PATRICIA T. MORRIS

# REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 16)

**I.  Recommendation**

For the reasons below, **I RECOMMEND** that that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion to dismiss (ECF No. 16), i.e., I recommend denying the motion as to Plaintiffs' Sixth Amendment claim against Defendant Swanson and the Michigan eavesdropping statute, and granting the motion as to all remaining claims.

**II.  Report**

    **A.  Background**

David Reed and Anthony Wesley are pretrial detainees who allege that the Genesee County Jail monitored their meetings with counsel and relayed confidential information

---

[1] Although misspelled in the docket, the undersigned recognizes that Reed's middle name is correctly spelled as "Allan."

1

from those meetings to the Prosecutor's office. (ECF No. 1, PageID.8–9, ¶¶ 1–2). Though they do not know who monitored their conversations, they seek to hold Chris Swanson, the Genesee County Sheriff, liable because he supervised the installation of the jail's surveillance system and failed to protect detainees from surveillance during meetings with counsel. (*Id.* at PageID.8, ¶ 1). They also allege that an assistant prosecuting attorney for Genesee County, Brian MacMillan, had access to the jail's surveillance footage. (*Id.* at PageID.9, ¶ 2). Because he could access the jail's surveillance footage, Plaintiffs surmise that MacMillan personally shared information from their meetings with prosecutors involved in their cases. (*Id.*)

In 2017, Genesee County allowed the Sheriff's Office to purchase a "closed-circuit camera system" for its jail. (*Id.* at PageID.8, ¶ 1, PageID.24). At the time, Chris Swanson was the undersheriff for Genesee County, and was responsible for overseeing the installation of the camera system. (*Id.* at PageID.8, ¶ 1). Although Plaintiffs allege that Swanson once requested "the account information" for the cameras system from a group of individuals,[2] they provide no detail regarding the extent of Swanson's involvement in the installation of the camera system. (ECF No. 1, PageID.25). Still, they allege that "Swanson was completely aware of where the observation equipment would be installed . . . ." (ECF No. 1, PageID.11, ¶ 2).

---

[2] Plaintiffs make this allegation by attaching to their complaint a copy of an email sent by Swanson. (ECF No. 1, PageID.25). Because Plaintiffs incorporate this exhibit into their complaint "by reference," the Court "must consider" this exhibit as part of their complaint. *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007).

Once installed, the surveillance system monitored the entire jail, recording both sound and visual, even in areas that were designated for attorney-client meetings. (*Id.* at PageID.8, ¶ 1, PageID.11, ¶¶ 8–9). Thus, Plaintiffs allege that because they had no private locations in which they could consult with their attorneys, they are "certain" that all of their attorney-client meetings, numbering in the "double-digits," were monitored. (*Id.* at PageID.10).

Although Swanson "was completely aware" of the areas covered by the surveillance system, Plaintiffs allege that he neglected to "rectify the problem . . . ." (*Id.* at PageID.11, ¶¶ 2–3). However, they do not allege any facts, outside of Swanson's role as a supervisor, demonstrating that Swanson knew of the jail's surveillance of confidential meetings. (*Id.* at PageID.8). In fact, Plaintiffs attach exhibits to their complaint which demonstrate that even if officials monitored attorney-client meetings in practice, audio surveillance of these meetings was not an accepted custom. For example, they attach an email from MacMillan where he explains to an individual requesting a recording of an attorney-client meeting that while the jail records visual footage of these meetings, it neither records nor monitors audio. (*Id.* at PageID.32–33). They also attach a transcript of a conversation Reed had with an official at the jail where the official explained that the jail did not record audio in areas designated for attorney-client meetings. (*Id.* at PageID.19).

Plaintiffs also imply that MacMillan transmitted information from their meetings to other prosecutors in his office. (*Id.* at PageID.9, ¶ 2). They allege that MacMillan can access the jail's surveillance footage, and they attach an email chain establishing that MacMillan once shared surveillance footage of an attorney-client meeting in response to a

3

FOIA request. (*Id.* at PageID.9, ¶ 2, PageID.12–13, ¶¶ 10–13).[3] However, Plaintiffs do not allege that MacMillan had exclusive access to the jail's surveillance footage or that he actively monitored their meetings. (*Id.*) Further, while Plaintiffs "strongly suspect[]" that the prosecutors involved with their cases knew confidential information, they plead few facts establishing the basis for this belief. (*Id.* at PageID.13, ¶ 13). Indeed, they state only that prosecutors learned of "exculpatory evidence" by monitoring their meetings and then took steps to conceal it. (*Id.*) They do not explain what this "exculpatory evidence" is or why prosecutors could only have learned of it by eavesdropping on their meetings with counsel.[4] (*Id.* at PageID.13, ¶¶ 12–13).

Plaintiffs filed a *pro se* complaint against Swanson and MacMillan, seeking to hold them liable under 42 U.S.C. § 1983 (2018) for violating several federal laws. (ECF No. 1). Specifically, they allege that the Defendants violated their rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments; the Federal Wiretapping Act; the Privacy Protection Act; and 18 U.S.C. § 2511 (2018). (*Id.* at PageID.5). They also attach three state-law claims, alleging that the Defendants violated Mich. Comp. L. §§ 750.539c–750.539e,[5] 780.991(2)(a) (2022), and their right to counsel under the Michigan Constitution. (*Id.*) Both Defendants later moved jointly to dismiss the entire complaint. (ECF No. 16).

---

[3] Plaintiffs do not allege that this footage contained audio.
[4] Plaintiffs appear to allege that they requested this information from prosecutors, undercutting their allegation that prosecutors learned of it by monitoring their meetings with counsel. (*Id.* at PageID.13, ¶ 12).
[5] Plaintiffs cite § 750.759a in their complaint, however, this section only provides definitions of terms used elsewhere in the act. (*Id.*)

### B. Standard of Review

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Plaintiffs filed their complaint *pro se*, their pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### C. Analysis

Defendants first argue that a violation of the attorney/client privilege does not equal a violation of the United States Constitution (Sixth Amendment) or any federal law. (ECF No. 16.) Defendants further argue that Plaintiffs have failed to plead a violation of the First, Fourth, or Fourteenth Amendments. (ECF No. 16.)

Defendants argue that in order to establish a violation of the Sixth Amendment based on recording of conversations between clients/prisoners and their attorneys, a plaintiff must show not only that the privilege was breached but "that the information that was learned through this violation was used to prejudice the criminal defense." (ECF No.16, PageID.96.)  Since Plaintiffs have not even alleged prejudice, Defendants contend the motion should be granted as to the Sixth Amendment claim, citing *United States v. Moses*, 337 F. App'x 443, 448 (6th Cir. 2009)("a Sixth Amendment violation based on intrusion on the attorney/client relationship only occurs if prejudice is shown."). (ECF No. 16, PageID.96-97.)

Defendants also contend that Plaintiffs' claims under the First Amendment fail because there is no First Amendment right to consult with an attorney. (ECF No. 16, PageID.97.) Defendants further argue that any Fourth Amendment claim must fail because Plaintiffs fail to allege what conduct violated their Fourth Amendment rights nor have they alleged any property was seized or why any seizure was unreasonable. (ECF No. 16, PageID.97-98.) Defendants also contend that Plaintiffs have failed to explain how any of their due process rights have been violated and thus, this claim should fail. (ECF No. 16, PageID.98.)

**1. Constitutional claims under the First, Fourth and Sixth Amendments**

Defendants raise good points as to claims under the First and Fourth Amendments.[6] The complaint fails to state how plaintiff's rights under these amendments were implicated or violated. However, I suggest the Sixth Amendment claim is viable.

As to the Fourth Amendment claim, Plaintiffs argue that the surveillance of their confidential meetings with counsel violated their right to be free from unreasonable searches and seizures. However, the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984). Plaintiffs have not alleged a scenario that involves privacy interests beyond surveillance, such as that females are watching the male shower surveillance. See, e.g., *Mitchell v. Blount Co. Detention Facility*, 2021 WL 1700346, at *5 (E.D. Tenn. Apr. 29, 2021). Therefore, I suggest this claim fails.

As to the Sixth Amendment claim, I note that generally, individuals do not have a constitutional right to attorney-client confidentiality or privilege. *See Dye v. Hofbauer*, 197 F. App'x 378, 383 (6th Cir. 2006). Confidentiality and privilege are common law doctrines that fall outside the scope of the Sixth Amendment. *Id.*; *see also Horaeck v. Seaman*, No. 08-10866, 2009 WL 2928546, at *10 (E.D. Mich. Sept. 10, 2009). However, because the Sixth Amendment ensures that all criminal defendants shall "have the right to [effective] assistance of counsel for [their] defense," intrusions into the attorney client relationship may implicate the Sixth Amendment where they deny a criminal defendant

---

[6] If any plaintiff were an attorney, the question whether the Fourth Amendment would apply to covert surveillance of the attorney meeting with his or her client could more arguably be viable. See, *Long v. County of Saginaw*, 2014 WL 5460630, at *6-9 (E.D. Mich. Oct. 27, 2014).

7

effective assistance of counsel. U.S. Const. amend. VI; *Horaeck*, 2009 WL 2928546, at *10; *see also Sanborn v. Parker*, 629 F.3d 554, 576 (6th Cir. 2010). As Defendants note, to show that an intrusion violates the Sixth Amendment, a criminal defendant must establish that he or she was "prejudice[d]" by the intrusion. *Sanborn*, 629 F.3d at 576.

A criminal defendant may establish prejudice in several ways. First, they may show that the confidential material obtained by the state, "produced, directly or indirectly, any of the evidence offered at trial." *Weatherford*, 429 U.S. at 552. For example, where the state offers testimony regarding confidential communications, where the state offers evidence it learned of through eavesdropping, or where prosecutors learn the "details" of the defendant's "trial preparations," their intrusion into the attorney-client relationship violates the Sixth Amendment. *Id.* at 554; *see also Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995); *Sinclair v. Schriber*, 916 F.2d 1109, 1112–13 (6th Cir. 1990).

Here, Plaintiffs do not plausibly allege that confidential information from their meetings with counsel was used against them. The Plaintiffs state broadly that prosecutors "learned of [their] defense strategies," but they plead no concrete facts showing that prosecutors had inside knowledge of their strategies, and they do not explain, specifically, how prosecutors used this information against them. (ECF No. 1, PageID.9, ¶ 2); *cf. Iqbal*, 56 U.S. at 680–81 (holding that an allegation that the defendants "knew of" a policy was conclusory). Indeed, the only nonconclusory fact the Plaintiffs plead in support of this assertion is that MacMillan could access these recordings. (ECF No. 1, PageID.9, ¶ 2).

Plaintiffs also make vague allegations that they "suspected" prosecutors were privy to their conversations with their attorneys, and through their eavesdropping, learned of, and

8

took steps to conceal, "exculpatory evidence" that Plaintiffs wished to uncover. (*Id.* at PageID.13, ¶¶ 12–13). But Plaintiffs provide no additional facts to support their suspicions. (*Id.*) They do not explain what evidence prosecutors learned of, or why they could only have learned of this information by listening to Plaintiffs' conversations. (*Id.*) In fact, Plaintiffs seem to suggest that prosecutors did not need to overhear their confidential conversations at all to learn of the "exculpatory evidence," as they explain that they "requested" this information from the prosecution. (*Id.* at PageID.13, ¶ 12).

Overall, Plaintiffs' attempts to demonstrate that the state used confidential information against them are vague and conclusory, and therefore are insufficient to state a plausible claim for relief. *See Twombly*, 550 U.S. at 555; *Sanborn*, 629 F.3d at 576.

Alternatively, however, Plaintiffs may establish prejudice by showing that the government's intrusion into their attorney-client relationships chilled open communication between them and their attorneys. *See Nordstrom v. Ryan*, 762 F.3d 903, 909–11 (9th Cir. 2014). A defendant cannot receive effective assistance without the ability to freely communicate with his or her attorney; thus, where state's surveillance leads a defendant to reasonably fear that he or she cannot communicate with counsel in private, the state has inhibited the defendant's right to counsel. *United States v. Levy*, 577 F.2d 200, 209 (3d Cir. 1978); *see also Weatherford*, 429 U.S. at 554 n.4; *Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1085 (D. Colo. Apr. 1, 1999).

Here, Plaintiffs certainly allege that their communications were monitored visually and auditorily. They claim that the entire jail is surveilled, leaving no private areas in which they can meet with counsel. (ECF No. 1, PageID.8, ¶ 1, PageID.12, ¶¶ 8–9). They also

allege, at the very least, that the prosecutor's office can access this surveillance footage, which contains audio. (*Id.* at PageID.9, ¶ 2, PageID.13, ¶¶ 12–13). Thus, the surveillance was pervasive, not just occasional, and it included not only a video recording but also an audio recording. Plaintiffss allege that they were aware that the jail had a surveillance system which covered the entire jail, but they do not personally know whether the system recorded audio. (*See* ECF No. 1, PageID.8, ¶ 1, PageID.12, ¶ 8–9). They also allege that a prosecutor once accessed surveillance footage of an attorney-client meeting, but they do not know whether this recording contained more than just visuals. (*Id.* at PageID.9, ¶ 2, PageID.13, ¶¶ 12–13, PageID.31–36). .

The instant case is similar to the situation in *Butler v. Pickell*, 2021 WL 3566276, at *1 (E.D. Mich. Aug. 12, 2021), In that case, the plaintiffs alleged that "Defendants installed an audio and video surveillance system in the jail which . . . recorded Plaintiff's confidential attorney-client meetings." *Id*. The court found that the complaint was sufficient to proceed after screening because the complaint stated a cognizable claim. *Id*. at *3. The court relied on cases holding that courts must consider "the chilling effect on one's constitutional rights" such as the right to counsel and that such chilling effect can be a present injury in fact. *Id*. at *4. I suggest the same rationale should be applied here. And the court should similarly find that the potential chilling effect that jail surveillance has on the Sixth Amendment right to counsel is sufficient injury in fact. *Grubbs v. O'Neill*, 744 F. App'x 20, 23(2nd Cir. 2018), citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974).

Although Defendant Swanson, as Genesee County Sheriff, would be sufficiently personally involved with the decision to conduct the surveillance, Plaintiffs do not

sufficiently allege that MacMillan was personally involved in their Sixth Amendment deprivation. To establish personal involvement, Plaintiffs must allege a causal link between MacMillan's conduct and the Sixth Amendment deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976). And because defendants in § 1983 actions are liable only for their own misconduct, Plaintiffs cannot attribute misconduct of other individuals to MacMillan. *See Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016) (first quoting *Iqbal*, 556 U.S. at 677, and then citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)). Accordingly, they must show that MacMillan caused both (1) the intrusion into their attorney-client relationship and (2) the chilling effect on their open communications with counsel.

Plaintiffs fail to allege that MacMillan was involved in either element. As to the chilling effect on Plaintiffs' communication with counsel, the Seventh Circuit's discussion in *DiDomenico* provides a helpful guide—intrusions that are both "pervasive[]" and "public[]" chill open communication, whereas intrusions that occur only on an ad-hoc basis do not. 78 F.3d at 299–300. While Plaintiffs may have been chilled by the fact that they held their attorney-client meetings in view of cameras which may have recorded their meetings, this conduct cannot be attributed to MacMillan. MacMillan did not control the jail's surveillance system, nor did he "pervasively" monitor security footage. (ECF No. 1, PageID.9, ¶ 2, PageID.12–13, ¶¶ 10–13). Plaintiffs allege only one occasion where MacMillan shared surveillance footage with another individual. And even here, MacMillan did not access the footage for the benefit of his office—he obtained the footage to fulfill a FOIA request and sent the information directly to the third party who made the

11

request. (*Id.* at PageID.31–37). Because MacMillan's conduct was neither pervasive nor public, it cannot have chilled Plaintiffs' exercise of their right to counsel. *See DiDomenico*, 78 F.3d at 299–300.

Nor do Plaintiffs allege that MacMillan personally intruded into their attorney-client relationship. They do not allege that MacMillan monitored their meetings with counsel or that he had any role in the use and placement of the jail's surveillance system. (*See* ECF No. 1, PageID.9, ¶ 2, PageID.12–13, ¶¶ 10–13). They do not allege that MacMillan personally viewed any of the jail's recordings. (*See id.*) And while they imply that MacMillan may have shared recordings with other prosecutors in his office, they do not plausibly allege that other prosecutors learned any confidential information. (*See id.*) Accordingly, because Plaintiffs do not establish that MacMillan personally intruded in their attorney-client relationships or chilled their communications with counsel, Plaintiffs do not plausibly allege that MacMillan violated their Sixth Amendment right to counsel.[7]

I therefore recommend that Defendants' motion to dismiss be granted as to Plaintiffs' claims under the First, and Fourth Amendments and under the Sixth Amendment as to Defendant MacMillan. However, I also suggest that the motion to dismiss be denied as to Plaintiffs' Sixth Amendment claim against Defendant Swanson.

---

[7] For overlapping reasons, I suggest that Plaintiffs do not plausibly allege that MacMillan violated their First Amendment rights. Criminal defendants have a First Amendment interest in speaking to counsel. *Bout v. Abramajtys*, No. 93-1383, 1994 WL 329219, at *2 (6th Cir. July 7, 1994); *see also Hamby v. McCullogh*, No. 12-01239, 2013 WL 140894, at *3 (M.D. Tenn. Jan. 10, 2013). And in the Sixth Circuit, "'[i]t is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.'" *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994) (quoting *G & V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994)). However, because Plaintiffs do not plausibly allege that MacMillan chilled their attorney-client communications, they also do not state a claim for relief under the First Amendment.

### 2. Due Process

Plaintiffs also allege that Swanson and MacMillan violated their right to Due Process under the Fifth and Fourteenth Amendments. First, because Defendants are state officials, they are bound by the Due Process Clause of the Fourteenth Amendment, not the Fifth Amendment. *Betts v. Brady*, 316 U.S. 455, 462 (1942). To the extent that Plaintiffs seek to bring a claim under the Due Process Clause of the Fourteenth Amendment, they do not specify whether they mean to bring a procedural or substantive due process claim.

Assuming that Reed and Wesley intend to bring a substantive due process claim, I suggest that this claim should be dismissed. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Because Plaintiffs' claims implicate the Sixth Amendment, the Court should not analyze these claims "under the rubric of substantive due process." *Id.*

Likewise, the Court should dismiss any procedural due process claims. With a few exceptions, the Sixth Amendment, rather than the Due Process Clause, governs a defendant's right to counsel, and the Supreme Court has held that surveillance of confidential attorney-client conversations for use in a criminal prosecution implicates the Sixth Amendment rather than the Due Process Clause. *Weatherford v. Bursey*, 429 U.S. 545, 552 (1977); *see Colson v. Joyce*, 646 F. Supp. 102, 105–06 (D. Me. 1986). Further, a plaintiff may not bring a procedural due process claim for conduct within the scope of

the Fourth Amendment. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 313 (6th Cir. 2005); *see also Ambrose v. City of New York*, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) (noting that plaintiff could not "state a claim for the violation of his procedural due process rights," because such a claim was subsumed in his claims for "false arrest and malicious prosecution"). Indeed, "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases . . . ." *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975). Accordingly, I suggest that any procedural due process claims should be dismissed.

### 3. Federal Statutes

I also suggest that the Court should dismiss Plaintiffs' claims under 18 U.S.C. § 2511 (2018) and the Privacy Protection Act of 1980. First, 18 U.S.C. § 2511 is a criminal statute. While the provision of a criminal penalty does not necessarily preclude a private cause of action, courts will not infer a private cause of action from a "'bare criminal statute with absolutely no indication'" that the legislature intended to allow for civil enforcement. *Marx v. Centran Corp.*, 747 F.2d 1536, 1549 (6th Cir. 1984) (quoting *Cort v. Ash*, 422 U.S. 66, 79–80 (1975)); *see also Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997). Nothing in this statute indicates that Congress intended to create a private cause of action. *Oliver v. Lexington Fayette Urban Cty. Gov't*, No. 5:20-cv-215, 2020 WL 2858008, at *4 (E.D. Ky. June 2, 2020) (holding that 18 U.S.C. § 2511 does not create a private cause of action).

Plaintiffs also allege that the Defendants violated the Privacy Protection Act of 1980, which prohibits government officials from searching or seizing "any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication . . . ." 42 U.S.C. § 2000aa(a) (2018). Because Plaintiffs do not allege that an official searched any such materials, they have not stated a plausible claim for relief under this statute.

### 4. Michigan Laws

That leaves Plaintiffs' claims arising under Michigan law. Specifically, Plaintiffs allege that the Defendants violated Mich. Comp. Laws §§ 750.539c–750.539e, 780.991(2)(a) (2022), and their right to counsel under the Michigan Constitution.

I suggest that the right to counsel claim should not survive. [U]nder Michigan law, Butler may not bring state constitutional claims against these defendants. In Jones v. Powell, 462 Mich. 329, 612 N.W.2d 423 (2000), the Michigan Supreme Court held that there is no independent damages remedy against individual government employees for violations of the Michigan State Constitution. Id., 462 Mich. at 337. Citing Smith v. Dep't. of Pub. Health, 428 Mich. 540 (1987), the Michigan Supreme Court held that held that while the state might be subject to state constitutional claims in a narrow class of cases, other governmental entities within the state, such as municipalities (or counties), as well as individuals, are not. Jones, 462 Mich. at 335 (finding "no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee."). . . . See Reed v. City of Detroit, No. CV 18-10427,

15

2019 WL 4574385, at *8–9 (E.D. Mich. Sept. 20, 2019) (Parker, J.) ("the Michigan Supreme Court has held that there is no damages remedy against an individual or municipality under the Michigan Constitution because other remedies are available against them, specifically a § 1983 claim.").

The Michigan eavesdropping statute, sections 750.539c-539e does appear to create a private cause of action. Thus, this claim should survive. *Williams v. Williams*, 237 Mich. App. 426, 430-431 (1999).

Plaintiffs' claim under Mich. Comp. L. § 780.991(2)(a) concerns a relatively new statute—the Michigan Indigent Defense Commission ("MIDC") Act. The provision of the Act at issue provides that the MIDC shall promulgate rules to ensure that defense attorneys can meet with their clients in an environment "where attorney-client confidentiality is safeguarded . . . ." Mich. Comp. L. § 780.991(2)(a).

However, the Act does not create an explicit private cause of action for individuals to sue municipalities that violate its provisions, and Michigan Courts have not yet addressed whether the Michigan Legislature intended to create a private cause of action. *Id.* §§ 780.981–780.1003.[8] I therefore find that this claim should be dismissed absent further case law to support the private cause of action.

---

[8] Although novel, this issue appears to be straightforward. The Act explicitly provides that violations of its duties do "not create a cause of action against the government . . . ." Mich. Comp. L. § 780.1003(3)–(4); *see also* Zachary Zurek, Note, *Gideon's Promise: Can the Michigan Indigent Defense Commission Act Fix the State's Broken Indigent Defense Delivery System?*, 61 Wayne L. Rev. 123, 137 (2015). Rather, the Act appears to give the MIDC exclusive authority to enforce its provisions, pursuant to a complex three-pronged scheme outlined in the Act. *See* Mich. Comp. L. §§ 780.997(3), 780.995(1); *see also* Zurek, *supra*, at 140. Given the Act's language and overall structure, a Michigan court likely would not find that it creates an implied private cause of action.

### III. Conclusion

For the reasons above, I **RECOMMEND** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion to dismiss (ECF No. 16), i.e., I recommend denying the motion as to Plaintiffs' Sixth Amendment claim against Defendant Swanson and the Michigan eavesdropping statute; and granting the motion as to all remaining claims.

### IV. Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file

a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 21, 2022               S/ PATRICIA T. MORRIS
                                  Patricia T. Morris
                                  United States Magistrate Judge