## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

David Allan[1] Reed and Anthony
Wesley, Jr.,

                        Plaintiffs,

v.

Chris Swanson and Brian D.
MacMillan,

                        Defendants.

_____/

Case No. 21-cv-11392

Judith E. Levy
United States District Judge

Mag. Judge Patricia T. Morris

## OPINION AND ORDER GRANTING IN PART PLAINTIFF DAVID ALLAN REED'S OBJECTION [30] AND ADOPTING IN PART THE MAGISTRATE JUDGE'S REPORT AND <u>RECOMMENDATION [27]</u>

Plaintiff David Allan Reed submitted one objection (ECF No. 30) to Magistrate Judge Patricia T. Morris' Report and Recommendation ("R&R") (ECF No. 27) recommending the Court grant in part and deny in part the motion to dismiss (ECF No. 16) filed by Defendants Chris Swanson and Brian D. MacMillan.

---

[1] This name is written as "Allen" on the docket, but it appears as "Allan" in the complaint. (*See* ECF No. 1, PageID.1.)

Judge Morris issued the R&R on June 21, 2022. (ECF No. 27.) The parties were required to file specific written objections, if any, within fourteen days of service. *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The copy of the R&R sent to Reed was returned to the Court as undeliverable (ECF No. 28),[2] and the Court mailed another copy of the R&R to Reed on August 2, 2022. The Court received Reed's objection, which is undated, on August 23, 2022. (ECF No. 30.) Even if Reed's objection is untimely, the Court nevertheless considers the merits of his objection. Defendants have not responded to Reed's objection, and the time for them to do so has expired.

For the reasons set forth below, Reed's objection is granted in part. Accordingly, the R&R (ECF No. 27) is ADOPTED IN PART.

## I.    Background

The factual and procedural background set forth in the R&R is fully adopted as though set forth in this Opinion and Order.

---

[2] There is no indication on the docket that the copy of the R&R mailed to Plaintiff Anthony Wesley, Jr. was returned to the Court as undeliverable. The Court has not received an objection to the R&R from Wesley.

## II.   Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *see Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague and dispute the general correctness of the report and recommendation. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id*. (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that

objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346. Because Reed is self-represented, the Court will construe his objection liberally. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."); *Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010) (stating that "we read a [*pro se*] prisoner's complaint liberally").

## III.  Analysis

The R&R indicates that in the complaint filed in this case under 42 U.S.C. § 1983, Plaintiffs

> allege that the Defendants violated their rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments; the Federal Wiretapping Act; the Privacy Protection Act; and 18 U.S.C. § 2511 (2018). ([ECF No. 1,] PageID.5). They also attach three state-law claims, alleging that the Defendants violated Mich. Comp. L. §§ 750.539c–750.539e,[5] 780.991(2)(a) (2022), and their right to counsel under the Michigan Constitution. (*Id.*) Both Defendants later moved jointly to dismiss the entire complaint. (ECF No. 16).

---

[5] Plaintiffs cite § 750.759a in their complaint, however, this section only provides definitions of terms used elsewhere in the act. (*Id.*)

(ECF No. 27, PageID.166 & n.5.) The R&R "recommend[s] denying [Defendants'] motion as to Plaintiffs' Sixth Amendment claim against Defendant Swanson and the Michigan eavesdropping statute; and granting the motion as to all remaining claims." (*Id.* at PageID.163, 179.)

Reed filed one objection that addresses three claims: (1) Plaintiffs' Fourth Amendment claim against Swanson, (2) an "M.R.P.C. 1.6(a)" claim, and (3) Plaintiffs' Sixth Amendment claim. (ECF No. 30.) Reed's arguments regarding these claims are discussed below. In addition, the Court supplements the R&R's analysis of the following claims: (1) Plaintiffs' First Amendment claim and (2) Plaintiffs' Federal Wiretap Act claim.

### A. Reed's Objection

#### i.  *Fourth Amendment Claim Against Swanson*

Reed's objection first appears to challenge the R&R's proposed finding that Plaintiffs' Fourth Amendment claim fails. The R&R provides the following analysis of this claim:

5

As to the Fourth Amendment claim, Plaintiffs argue that the surveillance of their confidential meetings with counsel violated their right to be free from unreasonable searches and seizures. However, the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984). Plaintiffs have not alleged a scenario that involves privacy interests beyond surveillance, such as that females are watching the male shower surveillance. See, e.g., *Mitchell v. Blount Co. Detention Facility*, 2021 WL 1700346, at *5 (E.D. Tenn. Apr. 29, 2021). Therefore, I suggest this claim fails.

(ECF No. 27, PageID.169.)

In his objection, Reed argues that "Swanson's allowance of governmental intrusion into plaintiff's reasonable expectation of privacy violates the 4th Amendment. . . . Based on case law plaintiffs clearly show that they had a legitimate expectation of privacy. . . . Surveillance without prior judicial authorization violates 4th Amendment. . . ." (ECF No. 30, PageID.186 (internal citations omitted).) Thus, Reed appears to dispute the R&R's handling of Plaintiffs' Fourth Amendment claim against Swanson.

At this stage, Plaintiffs have sufficiently alleged a Fourth Amendment claim against Swanson. "[P]risoners do not forfeit all

constitutional rights by virtue of their confinement." *Loza v. Mitchell*, 705 F. Supp. 2d 773, 882 (S.D. Ohio 2010) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)), *aff'd*, 766 F.3d 466 (6th Cir. 2014). Moreover, "the Sixth Circuit has held that visual surveillance can constitute a Fourth Amendment search in some circumstances." *Long v. Cnty. of Saginaw*, No. 12-cv-15586, 2014 WL 5460630, at *6 (E.D. Mich. Oct. 27, 2014) (citing *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008); *Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987)); *see Kent*, 821 F.2d at 1226–27 (finding that the complaint "state[d] a constitutional claim upon which relief can be granted" based on the "assum[ption] that there is some vestige of the right to privacy retained by state prisoners and that this right protects them from being forced unnecessarily to expose their bodies to guards of the opposite sex").

In *Butler v. Pickell*, a *pro se* prisoner civil rights case, the plaintiff—similar to Plaintiffs in this case—alleged that the Genesee County Jail's audio and video surveillance system recording his confidential meetings with his attorney violated his constitutional rights. No. 1:21-cv-10817, 2022 WL 3337170, at *1 (E.D. Mich. May 11, 2022), *report and*

*recommendation adopted*, No. 1:21-cv-10817, 2022 WL 2835833 (E.D. Mich. July 20, 2022). In that case, this court determined that the plaintiff's Fourth Amendment claim survived dismissal under Federal Rule of Civil Procedure 12(b)(6). The court rejected the defendants' argument that "there is no reasonable expectation of privacy in rooms in the jail where surveillance cameras are clearly visible," analyzing the plaintiff's Fourth Amendment claim as follows:

> The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend. IV. "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). This two-part test, first articulated in Justice Harlan's concurring opinion in *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) requires a showing that (1) the individual has a subjective expectation of privacy, and (2) the expectation is one that society recognizes as reasonable. *See Long v. C[nty.] of Saginaw*, No. 12-cv-15586, 2014 WL 1845811, at *4 (E.D. Mich. May 8, 2014).
>
> While there is a diminished expectation of privacy in a prison or jail, the Fourth Amendment is not completely suspended in those settings, because "the Fourth Amendment protects people, not places." *Katz*, 389 U.S. at 352. In *Long*, the plaintiff, an attorney, claimed that members of the Saginaw County Sheriff's Office violated his Fourth Amendment rights by videotaping his conversations with his client. Because the

8

claim involved attorney-client communications, the Court found it not dispositive that the conversations occurred in the jail:

> Because "the Fourth Amendment protects people, not places," *Katz*, 389 U.S. at 352, it is not dispositive that Long's conversation took place within a jail. "[I]n the prison setting, attorney-client communications generally are distinguished from other kinds of communications and exempted from routine monitoring." *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 432 (E.D.N.Y. 2006); *see also Evans v. Inmate Calling Solutions*, 2011 WL 7470336, at *15 (D. Nev. July 29, 2011) ("[I]t is objectively reasonable for confidential communication between an inmate and his attorney to remain private."); *Sowards v. City of Milpitas*, 2005 WL 1566540, at *3 (N.D. Cal. July 5, 2005) (holding that the police violated the Fourth Amendment by recording an attorney-client conversation in an interrogation room).

*Long*, at *4. The fact that Long brought claims in his capacity as an attorney, not an inmate-client is of no import given that [the plaintiff in *Butler*], like his attorney, had a reasonable expectation of privacy. Stressing the importance of attorney-client communications, the district court in *Long* added, "Indeed, the need for confidential attorney-client communications and the informed legal assistance they facilitate is no less pressing in a police station or jailhouse setting than in other circumstances." *Id.* (citing *Lanza v. State of New York*, 370 U.S. 139, 143–44 (1962)). The district court found that the fact that Long's communications with his client

were privileged created at least a question of fact as to whether he had a subjective expectation of privacy:

> In light of the caselaw authority, although Long's communications with his client occurred within the Saginaw County Jail, he may have had a subjective expectation of privacy in those communications. The conversation concerned legal matters for which Long had been hired by his client, and therefore the attorney-client privilege attached to those communications.

*Id.* at *5 (footnote omitted and quoting *In re State Police Litigation*, 888 F. Supp. 1235, 1256 (D. Conn. 1995)) ("[W]here no consent exists, and where conversations consist of privileged communications between clients and their attorneys, an expectation of privacy is reasonable.").

Denying summary judgment to the defendants, the district court in *Long* also found that there was at least a question of fact as to whether the expectation of privacy was reasonable:

> Taking the facts in a light favorable to Long, the non-movant, the Court concludes that there is a genuine issue of fact regarding whether Long had a reasonable expectation of privacy in the small classroom while meeting with his client. No signs warned of the possibility of surveillance, neither attorneys nor their clients were told of the possibility of surveillance, and there were no indications that the camera in the small classroom was on or recording the events. Given the lack of warning about the possibility of surveillance and the highly confidential nature of attorney-client

10

> communications, there is an issue of fact regarding
> whether Long had a reasonable expectation of
> privacy in his communication with Ms. Messing[,
> his client,] in the small classroom at the Saginaw
> County Jail.

*Id.* at *6 (footnote omitted).

> Defendants [in *Butler*] seek dismissal under Rule 12(b)(6), not
> summary judgment under Rule 56. Following discovery, there
> may or may not be questions of fact as to whether the
> surveillance cameras were visible, whether [the plaintiff] or
> his attorney knew or were told that the cameras were
> recording their conversations, or whether there were written
> warnings of that possibility. Likewise, there may be questions
> as to whether the jail protocols on recording were permissible
> as "reasonably related to legitimate penological interests."
> *Turner*, 482 U.S. at 89. However, at this stage of the litigation,
> [the plaintiff] has raised a plausible Fourth Amendment
> claim. Defendants' categorical assertion that "there is no
> reasonable expectation of privacy in rooms in the jail where
> surveillance cameras are clearly visible" (ECF No. 24,
> PageID.118) is, as a general matter, incorrect under *Long* and
> the cases cited therein. Again, while Defendants may raise or
> succeed on this argument on summary judgment, it does not
> support dismissal under Rule 12(b)(6).

*Butler*, 2022 WL 3337170, at *5–6 (footnote omitted).

Courts have found that inmates' expectation of privacy is affected

when they are given notice that their communications are being

monitored and recorded. In a different case than the one discussed above,

this court determined that a prisoner challenging the recording of his

attorney-client telephone calls did not allege a Fourth Amendment

violation in part because

> the calls to [his] attorney . . . that were inadvertently recorded
> were preceded by a warning that "this call is subject to
> monitoring and recording." *Declaration of Eileen Cocklin,
> Exhibit A to Defendant's Motion*, ¶ 9. That being the case, the
> Plaintiff's expectation of privacy was extinguished, and he is
> deemed to have consented to the recording. In *United States
> v. Adams*, 2009 WL 1011205, *12 (6th Cir. 2009), the Sixth
> Circuit held:
>
> > "The [defendants] could not have expected privacy
> > where a message at the start of every telephone
> > call informed the inmates that they had no right to
> > privacy and that their conversation was being
> > recorded and possibly monitored."
>
> *See also United States v. Amen*, 831 F.2d 373 (2d Cir. 1987),
> *cert. denied*, 485 U.S. 1021, 108 S. Ct. 1573, 99 L.Ed.2d 889
> (1988) (holding consent could be implied where prisoners
> received notification of recording on institutional telephones,
> and thus prisoners had no reasonable expectation of privacy
> in conversations on those phones).

*Walen v. Embarq Payphone Servs. Inc.*, No. 06-14201, 2009 WL 3012351,

at *5 (E.D. Mich. Sept. 17, 2009); *see United States v. Sutton*, No. 6:17-cr-

00032-GFVT-HAI, 2018 WL 542968, at *4 (E.D. Ky. Jan. 24, 2018) ("[T]he

Sixth Circuit has held that there is no expected right of privacy on jail

calls, 'where a message at the start of every telephone call inform[s] the inmates that they ha[ve] no right to privacy and that their conversation [is] being recorded and possibly monitored.'" (alterations in original) (quoting *United States v. Adams*, 321 F. App'x 449, 462 (6th Cir. 2009))), *aff'd*, 769 F. App'x 289 (6th Cir. 2019); *Smith v. Bradley*, 53 F.3d 332 (6th Cir. 1995). Yet a court in the Western District of Michigan distinguished non-attorney conversations from conversations with attorneys in stating that "as long as notice is provided to inmates, jail and prison officials are permitted to and do routinely monitor telephone and in-person conversations of inmates, except when prisoners are speaking confidentially with their attorneys." *Uraz v. Ingham Cnty. Jail*, No. 1:19-cv-550, 2019 WL 4292394, at *9 (W.D. Mich. Sept. 11, 2019) (citing *United States v. Houston*, No. 3:13-10-DCR, 2013 WL 5595405, at *8 (E.D. Tenn. Oct. 10, 2013)).

Here, "construing the complaint in the light most favorable to the plaintiff[s] and accept[ing] all allegations as true," *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (internal citation omitted), the Court finds that Plaintiffs allege that they had an expectation of privacy in their confidential attorney-client conversations at the jail. Plaintiffs state in

13

the complaint that "Swanson will attempt to claim there are attorney-client booths and lawyers are aware of them. But yet there are no signs posted, designating attorney-client conversation areas and the booths have audio/video capabilities." (ECF No. 1, PageID.12.) Plaintiffs state that "the schoolroom (also audio/video monitored) was shut down from about 12-1-19 to 12-1-20, for the storage of elevator installation equipment and no other place was provided with supposed privacy safeguards." (*Id.*) The relief Plaintiffs seek in the complaint includes that "'soundproofed' rooms be made and available for confidential consultations. As well as signs posted making aware of audio/video areas to end the illegal eavesdropping. In addition, notify Brian MacMillan that his conduct could become the focus of a criminal investigation if he does not cease-and-desist violating attorney-client privilege law." (*Id.* at PageID.14.)

Because Plaintiffs state that they were not notified that their attorney-client meetings were being recorded and because Plaintiffs appear to state that their meetings involved conversations to which the attorney-client privilege attached, they have alleged a subjective and reasonable expectation of privacy in their confidential conversations with

their attorneys sufficient to withstand dismissal of their Fourth Amendment claim against Swanson. Like the Fourth Amendment claim in *Butler*, Plaintiffs' claim is not subject to dismissal under Rule 12(b)(6), whose standard is distinguishable from the summary judgment standard of Rule 56. *See Butler*, 2022 WL 3337170, at *5–6. Therefore, this portion of Reed's objection is granted and the Court rejects the R&R's conclusion that Plaintiffs' Fourth Amendment claim against Swanson should be dismissed.

### ii.   *"M.R.P.C. 1.6(a)" Claim*

With respect to the portion of his objection involving an "M.R.P.C. 1.6(a)" claim, Reed argues that

> Mr. MacMillan releasing audio/video discs to an unauthorized 3rd party clearly violates M.R.P.C. 1.6(a), which states: "Confidence" refers to information protected by the lawyer-client privilege under applicable law. According to the E-mails produced as evidence, it's clearly apparent Mr. MacMillan has no hesitation releasing audio-video attorney-client communications to a unauthorized 3rd party. It would be unrealistic to believe that if a coworker seeked such conversations that Mr. MacMillan would deny the request.

(ECF No. 30, PageID.186–187.)

To the extent Reed argues in his objection that MacMillan violated Michigan Rule of Professional Conduct 1.6(a), this portion of his objection

is rejected. Plaintiffs do not allege a violation of this rule in the complaint or in their responses to Defendants' motion, and the R&R does not mention the Michigan Rules of Professional Conduct. "A plaintiff 'may not raise entirely new claims in [his] objections,' regardless of his *pro se* status." *Mcglory v. Mich. Dep't of Corr.*, No. 2:20-CV-81, 2021 WL 2471068, at *4 (W.D. Mich. June 17, 2021) (alteration in original) (quoting *Dennis v. Knab*, No. 2:08-CV-866, 2010 WL 3258395, at *1 (S.D. Ohio Aug. 17, 2010); citing *Holycross v. United States*, No. 2:05-CR-262, 2012 WL 13093313, at *1 (S.D. Ohio May 3, 2012)); *see Jones v. Mich. Dep't of C.R.*, No. 18-11934, 2019 WL 1097489, at *2 (E.D. Mich. Mar. 8, 2019) ("[P]arties may not add new claims in an objection to a report and recommendation or raise new arguments." (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000))); *Favors v. Leach*, No. 2:16-CV-33, 2019 WL 1397086, at *2 (W.D. Mich. Mar. 28, 2019) (stating that "objections are not the proper vehicle for asserting new claims"). "[W]hile the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Smith v.*

16

*CEVA Logistics U.S. Inc.*, No. 3:19-cv-00913, 2021 WL 516280, at \*3 (M.D. Tenn. Feb. 11, 2021) (quoting *Murr*, 200 F.3d at 902 n.1). The Sixth Circuit indicates that "a claim raised for the first time in objections to a magistrate judge's report is deemed waived." *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010) (citing *Ward v. United States*, 208 F.3d 216, 216 (6th Cir. 2000)).

Reed's objection involving "M.R.P.C. 1.6(a)" is also improper because it does not object to a proposed finding or recommendation that appears in the R&R. This court has stated that

> [o]bjections to a Magistrate Judge's R&R are necessarily limited to the facts and legal conclusions made in that particular report—a party may not request reconsideration of prior rulings, provide new evidence without leave of court, or raise new claims by filing objections. Federal Rule of Civil Procedure 72 allows parties to file "specific written objections *to the proposed findings and recommendations*." Fed. R. Civ. P. 72(b)(2) (emphasis added). Further, under Local Rule 72.1, those specific written objections must "specify the part of the order, proposed findings, recommendations, or report to which a person objects." E.D. Mich. LR 72.1(d)(1)(A). These rules reflect the purpose of the Magistrate's Act, which is "to improve access to the federal courts and aid in the efficient administration of justice," by narrowing the focus of the district court to the issues "at the heart of the parties' dispute." *Howard*, 932 F.2d at 509 (internal citations

17

omitted). Thus, objections should be used to pinpoint any crucial errors made by the Magistrate Judge . . . .

*Northington v. Abdellatif*, No. 16-cv-12931, 2020 WL 1809679, at *3 (E.D. Mich. Apr. 9, 2020), *appeal dismissed*, No. 20-1435, 2021 WL 1960956 (6th Cir. May 13, 2021).

Here, Reed's argument in his objection regarding "M.R.P.C. 1.6(a)" appears to assert a new claim; the argument does not relate to an existing claim in the complaint or identify an alleged error in the R&R. Therefore, this portion of Reed's objection is overruled.

### iii. Sixth Amendment Claim

Reed's objection also appears to challenge the R&R's proposed finding that Plaintiffs fail to allege prejudice with respect to their Sixth Amendment claim. Reed argues that

> United States v. Moses, 337 F. App'x 443, 448 (6th Cir. 2009); states: "A 6th Amendment violation based on intrusion on the attorney/client relationship only occurs if prejudice is shown."

> Plaintiff Reed was going to introduce a corrupt pattern of Genesee County Medical Examiner Brian Hunter creates when he does an autopsy. Plaintiff Reed was going to establish that Mr. Hunter claims fatal injuries that he does not record or document which is standard procedure as well as exaggerating injuries that don't exist. Two different expert witnesses wrote reports citing plaintiff's concerns. At trial prosecution informed plaintiff's attorney that Mr. Hunter's

18

evaluation of the alleged fatal injury was a type-o error. That specific trial strategy could only have been learned through eavesdropping on plaintiff's conversation with his lawyer.

\* \* \*

The prosecution could have "ONLY" learned of my trial strategy through eavesdropping on client-attorney meetings facilitated by Mr. MacMillan. Thus denying plaintiff Reed a fair trial.

(ECF No. 30, PageID.187–188.)

This portion of Reed's objection is rejected because it does not identify an error in the R&R. Reed presents new arguments in his objection, as well as information that does not appear in the complaint and that he states he "was going to introduce." (*Id.* at PageID.187.) But a party may not introduce new claims or raise new arguments in an objection to a report and recommendation, as noted above. *See Mcglory*, 2021 WL 2471068, at \*4; *Jones*, 2019 WL 1097489, at \*2; *Murr*, 200 F.3d at 902 n.1; *Smith*, 2021 WL 516280, at \*3; *Favors*, 2019 WL 1397086, at \*2; *Swain*, 379 F. App'x at 517–18; *Northington*, 2020 WL 1809679, at \*3. Because Reed presents new arguments and information in his objection that he did not include in the complaint (or in response to Defendants' motion to dismiss), his objection is invalid and does not demonstrate that

19

the R&R's analysis of the complaint is flawed. Therefore, this portion of Reed's objection is overruled.[3]

---

[3] The Court notes that Reed's arguments regarding prejudice with respect to the Sixth Amendment claim raise concerns about this claim possibly being barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). To the extent Reed argues in his objection that prejudice for purposes of the Sixth Amendment claim is established through events that happened during his criminal trial, the Sixth Circuit states that

> [c]laims which challenge the validity of a state conviction or sentence are not cognizable under § 1983 in the absence of a demonstration that the criminal conviction or sentence in state court "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87, 114 S. Ct. 2364; *see also Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995).

*Scheib v. Grand Rapids Sheriff's Dep't*, 25 F. App'x 276, 277 (6th Cir. 2001); *Horacek v. Seaman*, No. 08-10866, 2009 WL 2928546, at *11 (E.D. Mich. Sept. 10, 2009) ("[T]he *Heck* rule is applicable whenever success on a claim—no matter how characterized by the plaintiff—would necessarily imply that his conviction is invalid. . . . [I]f plaintiff's claims would necessarily imply that his conviction is invalid, his claims are barred by *Heck* notwithstanding the fact that plaintiff did not mention the conviction in his complaint and does not directly challenge that conviction."). In *Horacek v. Seaman*, the court found that the

> plaintiff has no Sixth Amendment claim based on the monitoring and recording of his telephone calls to counsel unless he establishes prejudice in his criminal case. And because such prejudice would establish that he was denied his right to counsel or to the effective assistance of counsel, such a showing would necessarily imply the invalidity of his conviction. Thus, plaintiff's claim relating to the monitoring of his telephone calls is not cognizable in a § 1983 action until that conviction has been overturned on appeal or through a habeas corpus challenge.

## B. Supplemental Analysis

### i.   *First Amendment Claim*

The R&R recommends that Plaintiffs' First Amendment claim be dismissed. (*See* ECF No. 27, PageID.163, 169, 174, 179.) According to the R&R, "[t]he complaint fails to state how plaintiff's [sic] rights under the[ ] [First A]mendment[ ] were implicated or violated." (*Id.* at PageID.169.) To the extent Plaintiffs allege that Defendants violated their First Amendment right to consult with an attorney[4] or their First Amendment right of access to the courts, the R&R properly recommends dismissal of Plaintiffs' First Amendment claim under Rule 12(b)(6).

"[T]he First Amendment protects the right of an individual or group to consult with an attorney on any legal matter." *Am. C.L. Union Fund*

---

2009 WL 2928546, at *11; *see Ryan v. O'Farrell*, No. 1:11-cv-1247, 2012 WL 33864, at *3 (W.D. Mich. Jan. 6, 2012) ("Assuming Defendant's conduct deprived Plaintiff of his Sixth Amendment right to effective assistance of counsel, and thereby altered the outcome of his criminal proceedings, Plaintiff's allegations clearly call into question the validity of his conviction. Therefore, his § 1983 action is barred under *Heck* until his criminal conviction has been invalidated."). If Reed's argument regarding prejudice is a challenge to his state conviction or sentence, his Sixth Amendment claim may be barred under *Heck*.

[4] The R&R states that "[c]riminal defendants have a First Amendment interest in speaking to counsel" and concludes that "Plaintiffs do not plausibly allege that MacMillan violated their First Amendment rights." (ECF No. 27, PageID.174 n.7 (internal citations omitted).) In the analysis that appears above, the Court considers Plaintiffs' First Amendment claim as to both Defendants.

*of Mich. v. Livingston Cnty.*, 23 F. Supp. 3d 834, 839 (E.D. Mich. 2014)

(quoting *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000)), *aff'd*, 796

F.3d 636 (6th Cir. 2015). Plaintiffs fail to allege a violation of their First

Amendment right to consult with an attorney because they do not allege

that they were "denied an opportunity to consult with an attorney." *Al-

Jabbar a'La v. Dutton*, 963 F.2d 373 (6th Cir. 1992) (stating that

"reasonable restrictions on telephone use do not implicate the loss of a

First Amendment right, especially as in the present case, where [the

plaintiff] was not denied an opportunity to consult with an attorney").

Regarding the First Amendment right of access to the courts, the

Sixth Circuit states that

> [p]risoners have a fundamental right of access to the courts
> under the First Amendment. *Lewis v. Casey*, 518 U.S. 343,
> 346, 116 S. Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v.
> Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L.Ed.2d 72 (1977);
> *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). . . . The
> United States Supreme Court has established that, in order
> to have standing to bring a claim for denial of access to the
> courts, the inmate must establish that he suffered an actual
> injury as a result of the alleged denial. *Lewis*, 518 U.S. at 349;
> *see also Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). .
> . . An "actual injury" does not occur "without a showing that .
> . . a [non-frivolous] claim has been lost or rejected, or that the
> presentation of such a claim is currently being prevented."
> *Root v. Towers*, 238 F.3d 423, table (6th Cir. 2000) (citing

> *Lewis*, 518 U.S. at 354–56; *Pilgrim*, 92 F.3d at 416). In other
> words, an inmate who claims that his access to courts was
> denied fails to state a claim "without any showing of prejudice
> to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.
> 1996) (citing *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir.
> 1993); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)).

*Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002); *see Scott v. Martin*,

112 F. App'x 409, 411 (6th Cir. 2004) ("In order to state a claim of denial

of access to the courts, [the plaintiff] was required to allege that he had

been prejudiced in pursuing non-frivolous litigation concerning his

conviction or prison conditions." (citing *Lewis*, 518 U.S. at 350–53));

*Butler*, 2022 WL 3337170, at *4 ("A First Amendment claim of denial of

access to the courts . . . requires a showing of prejudice where the inmate

must show actual injury or that the defendants' conduct 'hindered his

efforts to pursue a legal claim.'" (quoting *Lewis*, 518 U.S. at 351–54)).

Here, Plaintiffs fail to allege prejudice in the complaint, so they do not

state a First Amendment claim based on the right of access to the courts.

Plaintiffs' failure to state a First Amendment claim as to the right to

consult with an attorney and the right of access to the courts provides

additional support for adopting the R&R's recommendation to dismiss

Plaintiffs' First Amendment claim under Rule 12(b)(6).

*ii.   Federal Wiretap Act Claim*

The R&R recommends dismissal of Plaintiffs' Federal Wiretap Act claim without further analysis. The Court finds that dismissal of this claim under Rule 12(b)(6) is not appropriate.

The Sixth Circuit indicates that

> [t]he Federal Wiretap Act provides a civil cause of action for any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the Act. 18 U.S.C. § 2520(a). "A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e); *see also Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998); *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990).

*Lanier v. Bryant*, 332 F.3d 999, 1003 (6th Cir. 2003); *see Bowens v. Aftermath Ent.*, 254 F. Supp. 2d 629, 637 (E.D. Mich. 2003) (stating that the Federal Wiretap Act "includes a private right of action" (citing 18 U.S.C. § 2520)).

In this case, Plaintiffs' allegations regarding improper audio recordings of their attorney-client meetings state a claim under the Federal Wiretap Act sufficient to withstand dismissal under Rule 12(b)(6). *See Carranza v. Cnty. of Cassopolis, Mich.*, No. 1:14-CV-887, 2014 WL 7051684, at *3 (W.D. Mich. Dec. 12, 2014) ("[T]o the extent that

24

Plaintiff's claim [under federal wiretap laws] is based on an unauthorized videotape, it does not fall within the federal wiretap statute."); *Long v. Cnty. of Saginaw*, No. 12-cv-15586, 2013 WL 5966181, at *5 (E.D. Mich. Nov. 8, 2013) (finding dismissal of the plaintiff's "claim for violation of the Federal Wiretapping Act" appropriate because the plaintiff "has not stated a claim upon which relief may be granted" given that jail officials "recorded [the plaintiff's] meetings without any audio, and therefore did not intercept communications covered by the Federal Wiretapping Act"). Moreover, it is unclear from the allegations in the complaint when Plaintiffs "first ha[d] a reasonable opportunity to discover the [alleged] violation," *Lanier*, 332 F.3d at 1003, so the Court will not dismiss this claim based on the statute of limitations at this time. *See Courser v. Mich. House of Representatives*, 831 F. App'x 161, 179 (6th Cir. 2020) (stating that "a 12(b)(6) motion 'is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations'" but that "dismissal is appropriate" if "'the allegations in the complaint affirmatively show that the claim is time-barred'" (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012))).

## IV.  Conclusion

For the reasons set forth above, Reed's objection (ECF No. 30) is granted in part. The R&R (ECF No. 27) is ADOPTED IN PART.

Defendants' motion to dismiss (ECF No. 16) is GRANTED IN PART AND DENIED IN PART. Defendants' motion is denied as to (1) Plaintiffs' Fourth Amendment claim against Swanson, (2) Plaintiffs' Sixth Amendment claim against Swanson, (3) Plaintiffs' claim under Michigan's eavesdropping statute against Swanson and MacMillan, and (4) Plaintiffs' Federal Wiretap Act claim against both Defendants. Defendants' motion is granted as to Plaintiffs' remaining claims.

IT IS SO ORDERED.

Dated: September 30, 2022        s/Judith E. Levy
        Ann Arbor, Michigan        JUDITH E. LEVY
                                     United States District Judge