## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

David Allan Reed and Anthony
Wesley, Jr.,

                                    Case No. 21-cv-11392
                Plaintiffs,

                                    Judith E. Levy
v.                                  United States District Judge

Chris Swanson and Brian D.          Mag. Judge Patricia T. Morris
MacMillan,

                Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF DAVID ALLAN REED'S OBJECTIONS [51] AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [50]

Magistrate Judge Patricia T. Morris issued a Report and Recommendation ("R&R") (ECF No. 50) recommending that the Court (1) grant the motion for summary judgment filed by Defendants Chris Swanson and Brian D. MacMillan (ECF No. 44) and (2) deny the motion for summary judgment filed by *pro se* Plaintiff David Allan Reed. (ECF No. 40.) Judge Morris issued the R&R on July 17, 2023. (ECF No. 50.)

Reed filed four objections to the R&R (ECF No. 51),[1] and Defendants responded to those objections. (ECF No. 52.)

For the reasons set forth below, Reed's objections are denied. The Court adopts the R&R (ECF No. 50), grants Defendants' summary judgment motion (ECF No. 44), and denies Reed's summary judgment motion. (ECF No. 40.)

## I.   Background

The factual and procedural background set forth in the R&R is fully adopted as though set forth in this Opinion and Order.

### A. Reed's Deposition Testimony

During his deposition on January 31, 2023, Reed testified that he met with his attorney in both the bubble[2] and the attorney-client conference rooms. (ECF No. 43-3, PageID.314, 320, 324–325.) Reed stated that, even before construction work prevented the use of the

---

[1] Reed's filing is titled "Plaintiff's Motion in Opposition." (ECF No. 51, PageID.595.) The filing identifies four objections to the R&R (*see id.* at PageID.595–596), and, therefore, it does not appear to be a separate motion.

[2] During his deposition, Reed referred to the room in question as "the rec room." (ECF No. 43-3, PageID.324.) Reed subsequently confirmed – after being shown certain photographs by defense counsel – that the terms "the rec room" and "the bubble" refer to the same space. (*See id.* at PageID.324–325.) In this Opinion and Order, the Court refers to the area at issue as "the bubble."

attorney-client conference rooms, he was sometimes prevented from having his meetings in the attorney-client conference rooms and meeting in the bubble "was all that was offered" to him. (*Id*. at PageID.342–343 ("Even prior to [the construction] they still would hold conferences [in the bubble] before any work was even done on the elevators.").)

Reed indicated during his deposition that he objected to meeting with his attorney in both the bubble and the attorney-client conference rooms. (*Id*. at PageID.320, 327). Reed had concerns about being recorded in both of those spaces. (*Id*.) In addition, Reed stated that, when he had meetings with his attorney in the bubble, he "objected to meeting right there because [he] didn't want to say anything in front of an officer that didn't concern them." (*Id*. at PageID.327.)

Reed testified that he was not warned about the existence of cameras in the bubble nor in the attorney-client conference rooms. (*Id*. at PageID.321, 323 ("There's no posting, there's no warning, there's none of that nowhere in the county jail.").) He believes that his conversations in the bubble and in the attorney-client conference rooms were recorded. (*Id*. at PageID.323 ("Anywhere I went with my attorney

them recordings were made.").) Reed testified that he did not know the capabilities of the camera in the bubble. (*Id.* at PageID.327.) Reed agreed that, when he had meetings with his attorney in the bubble, the deputy was closer in proximity to him and his attorney than the camera. (*Id.*) However, Reed disagreed with the assertion that "anything that's going to get picked up on the camera is going to get heard by the deputy." (*Id.*) Reed argued that "[t]he audio [on the cameras] could be enhanced" so that conversations that are inaudible to the deputy are audible to the camera. (*Id.*) Reed acknowledged that he has no evidence for that contention. (*Id.* at PageID.327–329.)

Reed is aware that video footage of another inmate's attorney-client meetings was released in response to a Freedom of Information Act request. (*Id.* at PageID.336–337; *see* ECF No. 1, PageID.37 (scanned image of disc with videos of other inmate's attorney-client meetings).) Reed stated that the inmate's conversations with his attorney can be "clearly" understood in the video footage. (ECF No. 43-3, PageID.328.) At the same time, Reed acknowledged that he did not personally review the footage. (*Id.*)

Additionally, Reed testified that he believes that a prosecutor watched footage of his attorney-client meetings because the prosecutor who worked on his case appeared to have "trial strategies" and other privileged information Reed discussed with his attorney. (*Id*. at PageID.332–335, 337–338 ("I never discussed anything with trial outside of talking with my lawyer anywhere. That was the only possible feasible way anybody could know anything.").)

### B. Anthony Wesley, Jr.'s Deposition Testimony

During Anthony Wesley, Jr.'s deposition on February 2, 2023 (ECF No. 43-14, PageID.372), Wesley testified that he used an attorney-client conference room to meet with his attorney "maybe one time, probably close to when [he] was ready to go to trial." (*Id*. at PageID.379.) Wesley stated that, even beyond the time period when construction closed the attorney-client conference rooms, the attorneys "mostly visit us in the bubble right next to the deputy desk" and "[w]e probably didn't go in the [attorney-client conference] rooms very much." (*Id*.) Wesley was not sure if his lawyer ever asked for a private room, as "[the attorney] already be seated by the time they call you out to come see your attorney." (*Id*. at PageID.381.)

5

Wesley knew there were cameras in the attorney-client conference rooms, but he was not sure if the cameras were recording or just monitoring. (*Id.* at PageID.384.) Wesley also knew there were microphones in the attorney-client conference rooms, but he was not sure if the microphones were active when he was there. (*Id.* at PageID.383.)

As to the bubble, Wesley agreed during his deposition that there was "always a deputy at the desk" in the bubble when he met with his attorneys. (*Id.* at PageID.382–383, 385.) He also agreed that there was a camera in the bubble. (*Id.* at PageID.383.)

Like Reed, Wesley testified that he believed that his attorney-client meetings were recorded and listened to by the prosecutors in his case. (*Id.* at PageID.389). He "fe[]l[t] like they knew some techniques that was just talked about between me and my attorney." (*Id.*) Wesley stated that he pled guilty in his criminal case because "[the prosecutors] had a heads-up on what was going on." (*Id.*)

## II.   Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must

6

resolve proper objections under a de novo standard of review. 28 U.S.C.
§ 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be
proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires
parties to 'specify the part of the order, proposed findings,
recommendations, or report to which [the party] objects' and to 'state
the basis for the objection.'" *Pearce v. Chrysler Group LLC Pension
Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate
arguments already presented to the magistrate judge are improper,
*Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing
*Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those
that are vague and dispute the general correctness of the report and
recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can
"discern those issues that are dispositive and contentious." *Id*. (citing
*Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th
Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining
that objections must go to "factual and legal" issues "at the heart of the
parties' dispute"). In sum, the objections must be clear and specific
enough to permit the Court to squarely address them on the merits. *See*

*Pearce*, 893 F.3d at 346. Because Reed is self-represented, the Court will construe his objections liberally. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

## III. Analysis

### A. Reed's Objections

As the R&R notes, the Court previously granted in part and denied in part Defendants' motion to dismiss. (ECF No. 50, PageID.587.) The following four claims currently remain in the case: (1) Plaintiffs' Sixth Amendment claim against Swanson, (2) Plaintiffs' Fourth Amendment claim against Swanson, (3) Plaintiffs' claim under Michigan's eavesdropping statute against Swanson and MacMillan, and (4) Plaintiffs' Federal Wiretap Act claim against Swanson and MacMillan. (ECF No. 32, PageID.219.) The R&R recommends that the Court grant Defendants' motion for summary judgment as to all claims. (ECF No. 50.) In light of this recommendation, the R&R "further recommend[s]" that Reed's motion for summary judgment be denied. (*Id.* at PageID.593.)

8

Reed filed four objections that challenge the R&R's findings regarding all four claims. (ECF No. 51.) Defendants oppose Reed's objections. (ECF No. 52.)

> i. *Objection I*

In Objection I, Reed notes that page 2 of the R&R states that "Defendant's [sic] concede that the plaintiff's [sic] public meetings with their attorneys were recorded, but deny violating att./client privilege because conversations were not private and hence not confidential." (ECF No. 51, PageID.597; *see also id.* at PageID.595 ("Objection I – Defendants concede to recording att./client public meetings, but deny violating the att./client privilege.")) In the remainder of his first objection, Reed appears to argue that his conversations were private and, thus, privileged. (ECF No. 51, PageID.597.) Because Reed is a *pro se* litigant, the Court will construe Objection I liberally; the Court construes the objection as disputing the R&R's determination that the attorney-client meetings in the bubble were not private, and, as a result, recording them did not violate the Fourth or Sixth Amendment. (ECF No. 50, PageID.591–592.)

Reed's objection is improper because it reiterates arguments that he presented in his response to Defendants' motion for summary judgment. Reed states in his objection that he "always objected to holding meetings in this and the other designated areas." (ECF No. 51, PageID.598.) Reed also contends that "realistically a conversation can be held between a [*sic*] att./client [in the bubble] and be unheard." (*Id.*) Reed argues that he "kept his conversations very low, asked for privacy, and took reasonable precautions to keep his remarks confidential" and that the bubble was large enough to have a quiet conversation that the present deputy could not hear. (*Id.* ("Looking at Ex. 5 of Defendant's Response to Plaintiff's Motion for Summary Judgment, it shows a spacious room.").) Finally, Reed contends that the camera's "enhancement capabilities" would allow attorney-client conversations, while inaudible to the deputy, to be "illegally listened upon" via the camera.[3] (*Id.* at PageID.599.)

---

[3] Nothing in the record indicates that the camera had such capabilities. "To avoid a motion for summary judgment, the defending party . . . may not rest upon mere allegations or denials in its pleadings and it is insufficient to merely allege in a general or conclusory fashion that issues of fact exist or might exist." *Kelley v. Carr*, 567 F. Supp. 831, 836 (W.D. Mich. 1983). Reed only has "mere allegations" as to the capabilities of the camera and other A/V equipment. As proof of the camera's

Reed made identical arguments in his response brief opposing the Defendants' motion for summary judgment. (*See* ECF No. 46, PageID.575 ("Plaintiff(s) 'ALWAYS' objected to having att./client meetings in the bubble."); *id.* ("Let's not disregard the fact that both the audio and video capabilities can be intensified to pick up A/V capabilities."); *id.* at 574 ("Now defense tries to convince this Court that the A/V cameras are too far away to pick up audio, but the deputy can hear better than the high priced surveillance system.").) "The Court is not obligated to reassess the identical arguments presented before the

capabilities, Reed cites a copy of an invoice dated October 11, 2017 listing A/V equipment purchased by the Genesee County Jail, claiming that this invoice is evidence that the "a/v equipment has enhancement capabilities . . . [such that] the att./client communications can be illegally listened upon." (ECF No. 51, PageID.599.) However, the invoice does not describe the camera's capabilities, merely what was purchased. Additionally, the Court reviewed the videos on the disc sent by Reed (ECF No. 1, PageID.37 (scanned image of disc)) and concluded that the conversations between attorneys and clients in the bubble were not audible. Finally, Reed previously testified that he "[doesn't] know the capabilities of the audio" and that he does not have any evidence that the audio can be enhanced. He merely says that he believes there is just a possibility that it could. (ECF No. 43-3, PageID.327.)

The Court recognizes that, as a *pro se* plaintiff in prison, Reed had limited means to conduct discovery and request the evidence he needed. However, he was "entitled to propound interrogatories, request documents, and engage in other forms of discovery" to find evidence that supports his allegations. *Klingele v. Eikenberry*, 849 F.2d 409, 412 n.1 (9th Cir. 1988); *see also Brown v. Rivard*, No. 16-11837, 2018 WL 2009547, at *1 (E.D. Mich. Apr. 30, 2018) ("[*Pro se* prisoner] plaintiff may conduct his discovery by means of written interrogatories.").

Magistrate Judge with no identification of error in the Magistrate Judge's recommendation." *Pearson v. Comm'r of Soc. Sec.*, No. 2:15-cv-14031, 2017 WL 1190947, at *3 (E.D. Mich. Mar. 31, 2017) (internal citations omitted). Therefore, this is not a proper objection.

Regardless, the R&R's findings for the Sixth and Fourth Amendment claims were based on facts that Reed does not dispute. (ECF No. 50, PageID.591–592.) The R&R determines that Defendants' motion for summary judgment as to Plaintiffs' Sixth Amendment claim should be granted as the "deputy's clear presence . . . renders the communication in the bubble nonprivileged." (*Id.* at PageID.591 (quoting *Butler v. Pickell*, No. 1:21-CV-10817, 2023 WL 3910348, at *6 (E.D. Mich. May 18, 2023), *report and recommendation adopted*, No. 1:21-CV-10817, 2023 WL 3901480 (E.D. Mich. June 8, 2023)).) Similarly, the R&R determines that summary judgment should be granted for Plaintiffs' Fourth Amendment claim because "tcameras [sic] and a deputy were present in the bubble" during attorney-client meetings, making the meetings not confidential. (*Id.* at PageID.592 (citing *Butler*, 2023 WL 3910348, at *9).) Reed does not dispute the

12

presence of the deputy; therefore, he has not demonstrated that the R&R's analysis is flawed.

Accordingly, Reed's first objection is overruled.

### ii. Objection II

In Objection II, Reed takes issue with a sentence in the R&R's Fourth Amendment analysis that quotes language from a Supreme Court case called *Hudson v. Palmer*, 468 U.S. 517 (1984). The sentence in the R&R is as follows: "The 'right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.'" (ECF No. 50, PageID.591–592 (quoting *Hudson*, 468 U.S. at 527–528).)

Reed objects to this sentence:

> To be correct, plaintiff's [sic] don't hold att./client meetings in their cells. Since Plaintiffs are first time prisoners at that facility, they only go where they are told to go by staff. According to the [Michigan Indigent Defense Commission] Act – Standard 2(8),[4]

---

[4] The Court presumes that Reed's reference to "MIDC Act – Standard 2(8)" in Objection II (ECF No. 51, PageID.599) was intended to be a reference to Mich. Comp. Laws § 780.991(2)(a), given that he cited that provision in previous filings. (*See* ECF No. 1, PageID.12.)

> systems without adequate settings for confidential visits for in
> custody clients will need compliance plans to create this space."

(ECF No. 51, PageID.599.)

Reed does not demonstrate that the R&R's analysis is flawed. Objections must go to the "factual and legal" issues "at the heart of the parties' dispute." *Arn*, 474 U.S. at 147. Reed does not show that the R&R improperly quotes language from *Hudson* or that the language from *Hudson* – which indicates that the "'institutional needs and objectives' of prison facilities" may require the "curtailment" of some Constitutional rights – is an inaccurate statement of the law. *Hudson*, 468 U.S. at 524 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974)). As Defendants note, "[t]he Magistrate [Judge] was merely pointing out that the 4th Amendment privacy right is not unconditional and must be considered in light of where the surveillance takes place." (ECF No. 52, PageID.606.) As a result, Reed's objection regarding the R&R's use of the quote from *Hudson* lacks merit.

To the extent Reed argues in his objection that Defendants violated the Michigan Indigent Defense Commission Act ("MIDCA"), this portion of his objection is rejected. "[O]bjections [are] to address specific concerns with the magistrate [judge]'s report." *Howard*, 932

14

F.2d at 509 (citing *Arn*, 474 U.S. at 147). Reed's objection contains an argument regarding the MIDCA; however, the R&R does not cite or reference that law. Thus, Reed's specific concern with the R&R is unclear.

Additionally, the Court notes that Reed's claim under the MIDCA was previously dismissed. (ECF No. 27, PageID.178; ECF No. 32.) Further, the MIDCA "explicitly provides that violations of its duties 'do not create a cause of action against the government.'" (ECF No. 27, PageID.178 n.8 (quoting Mich. Comp. Laws § 780.1003(3)–(4)).)

Accordingly, Reed's second objection is overruled.

### iii.    Objection III

In Objection III, Reed objects to language in the R&R's analysis of the Fourth Amendment claim:

> Judge Morris states on pg. 7, that signs are posted in the "public entrances" stating the facility "was" monitored by A/V equipment. However, those signs are posted stating "facility MAY be monitored," instead of stating "IS monitored." So technically nobody can be positive if the A/V is functioning. Thus, no assurance is given of possible monitoring and recording of att./client meetings. Also, taking into account plaintiffs were not brought into the facility by the public entrances and "NO" signs are posted on the holding floors.

(ECF No. 51, PageID.600; *see also id.* at PageID.595 ("Objection III – The defendant's claim of posted signs and possibility of monitoring."))

Reed's objection is based on the sign's language and his assertion that he never saw such a sign. However, the R&R's determination of Plaintiffs' Fourth Amendment claim does not depend on the sign's contents nor Plaintiffs' awareness of it.

The R&R relies on *Butler's* Fourth Amendment analysis in its evaluation of Plaintiffs' Fourth Amendment claim. (ECF No. 50, PageID.592 ("I again recommend following the well-reasoned opinion in *Butler* and granting Defendants' motion for summary judgment as to the Fourth Amendment claim as well.").) Like Reed, the plaintiff in *Butler* claimed that he never saw the sign and that he had no expectation of audio recording. *Butler*, 2023 WL 3910348, at *9. The court in *Butler*, however, explained that "[t]he obvious presence of the deputy in the bubble, which Butler acknowledges, is fatal to the claim that Butler had a reasonable expectation of privacy communicating with his attorney in the bubble." *Id.* at *10.

Here, Reed's objection does not identify an error with the R&R's analysis of his Fourth Amendment claim. Reed does not dispute that

16

there was a deputy present in the bubble during his attorney-client meetings; thus, like *Butler*, the R&R properly concluded that he does not have a reasonable expectation of privacy when communicating with his attorney in the bubble.

Accordingly, Reed's third objection is denied.

> iv.    *Objection IV*

Finally, Reed's Objection IV challenges the R&R's analysis of the Fourth Amendment, Federal Wiretap Act, and Michigan eavesdropping statute claims.

Reed first states:

> On pg. 7, Judge Morris claims the att./client spaces lacked audio recording. Going back to pg. 3, it states: attorneys sometimes met with their clients in the bubble and were far enough away that audio is unintelligible. First, the bubble now is claimed as an att./client space. Secondly, it's audio recorded (with enhancement capabilities).

(ECF No. 51, PageID.600.)

Reed references two parts of the R&R. The first part appears in the R&R's analysis of the Fourth Amendment claim. The R&R observes:

> The court [*in Butler*] distinguished *Long v. County of Saginaw*, 2014 WL 1845811 (E.D. Mich. May 8, 2014) and noted the absence of a genuine issue of fact because, as here, tcameras [sic] and a deputy were present in the bubble and because "there were signs

17

in [place at all] public entrances to the Jail stating that the facility was monitored by video and audio, and that only the attorney-client spaces lacked audio [monitoring]."

(ECF No. 50, PageID.592) (quoting *Butler*, 2023 WL 3910348, at *9–10.))

The second part of the R&R that Reed references is a discussion of the facts – as presented by Defendants in their summary judgment motion – that appears in the R&R's background section. (*Id.* at PageID.588.)

Reed appears to misunderstand the R&R. The R&R, when referencing "the attorney-client spaces," does not refer to any location where attorneys met their clients; instead, it specifically refers to the attorney-client conference rooms, which is a different place than the bubble. (*Id.* at PageID.592 (quoting *Butler*, 2023 WL 3910348, at *9–10).) Further, Reed's assertion that "the bubble now is claimed as an att./client space" and that the bubble "is audio recorded (with enhancement capabilities)" does not point to an error in the R&R's analysis of Plaintiffs' Fourth Amendment claim. (ECF No. 51, PageID.600.) The R&R determines that attorney-client conversations in the bubble were not confidential because of the deputy's presence; the

18

fact that some attorney-client conversations occurred in the bubble does not make it an "att[orney]/client space." (ECF No. 50, PageID.592.) *See also Butler*, 2023 WL 3910348, at *10 ("The obvious presence of the deputy in the bubble, which Butler acknowledges, is fatal to the claim that Butler had a reasonable expectation of privacy communicating with his attorney in the bubble."). Reed's objection fails because he does not show that the R&R incorrectly determines this issue.

In a subsequent portion of Objection IV, Reed challenges the R&R's analysis of the Federal Wiretap Act and Michigan eavesdropping statute claims. Reed argues that,

> On pg. 8, Judge Morris cites case law exempting Defendant's [sic] actions stating: "So long as the prisoner is given some form of notice that conversations may monitored [sic] or recorded." Again, Plaintiffs were never made aware of such things, let alone agreement of conditions being illegally imposed upon them.

(ECF No. 51, PageID.600.)

In its analysis of Plaintiffs' Federal Wiretap Act and Michigan eavesdropping statute claims, the R&R articulates:

> Under the Federal Wiretap Act, 18 U.S.C. § 2520(a), "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States" damages as described in that section. Section

19

2510(5)(a)(ii) defines the phrase "electronic, mechanical, or other device" to exclude "equipment . . . being used . . . by an investigative or law enforcement officer in the ordinary course of his duties." Michigan's [eavesdropping] statute also contains an exception similar to the federal exclusion. Mich. Comp. Laws § 750.539(g) (excepting law enforcement officials who obtain recordings "while in the performance of the officer's duties.").

The Sixth Circuit has held that "routine and almost universal recording of phone lines by police department and prisons . . . is exempt from the statute" so long as the prisoner is given "some form of notice that such conversations may be monitored or recorded."

(ECF No. 50, PageID.592–593 (quoting *Adams v. City of Battle Creek*, 250 F.3d 980, 984–985 (6th Cir. 2001)).)

The R&R determines that "Plaintiffs and counsel were given notice that the conversations in the bubble were monitored and recorded" and, thus, "Defendants [sic] actions are exempt from liability under the Federal and Michigan statutes." (*Id.* at PageID.593 (citing *People v. Alexander*, No. 311437, 2014 WL 891043, at *5 (Mich. Ct. App. Mar. 6, 2014)).) The R&R finds that, because signs were placed at the jail's public entrances, and because a deputy and a camera were present in the bubble, Plaintiffs had notice. (ECF No. 50, PageID.593.)

In his objection, Reed argues that he did not have notice of the recording, asserting that "[a]gain, Plaintiffs were never made aware of

such things . . . ." (ECF No. 51, PageID.601). Reed does not specifically identify how the R&R erred in determining that he had notice that conversations were being recorded in the bubble. However, the Court will construe Objection IV liberally due to Reed's *pro se* status. *Boswell*, 169 F.3d at 387.

In Objection IV, Reed indicates that he is referencing arguments made in his previous objections. (ECF No. 51, PageID.601 ("**Again**, Plaintiffs were never made aware of such things.") (emphasis added).) In a prior objection, Reed argues that he was not put on notice of the possibility of being recorded in the bubble because he did not see the signs that warned of monitoring. (ECF No. 51, PageID.600 ("Plaintiffs were not brought into the facility by the public entrances and 'no' signs are posted on the holding floors.").) The Court carefully reviewed the record, and there appears to be a genuine dispute of facts as to whether inmates are able to see these signs. (ECF No. 52, PageID.607 (arguing that, while "it may be so" that Reed did not see the sign, his attorneys did because they entered the jail through a public entrance).) Therefore, to the extent that the R&R determines that "Defendants [sic] actions

are exempt from liability under the Federal and Michigan statues"
because the sign provided notice to Reed, the R&R is not adopted.

However, the R&R's recommendation that Defendants' summary
judgment motion be granted as to the Federal Wiretap Act and
Michigan eavesdropping statute is still proper, as the R&R's
determination that Reed had notice is not solely based on his awareness
of the sign. The deputy's presence in the bubble during attorney-client
conversations is ultimately fatal to Plaintiffs' Federal Wiretap Act and
Michigan eavesdropping statute claims. (ECF No. 50, PageID.593
("[B]ecause Plaintiffs and counsel were given notice that the
conversations in the bubble were monitored and recorded and **an
officer was present in the room**, Defendants [sic] actions are exempt
from liability under the Federal and Michigan statutes.") (emphasis
added) (citing *Alexander*, 2014 WL 891043, at *5).)

Under both the Federal Wiretap Act and the Michigan
eavesdropping statutes, Plaintiffs' conversations in the bubble are not
protected because they were not private. In *Huff v. Spaw*, 794 F.3d 543,
548 (6th Cir. 2015), the Sixth Circuit stated that "[w]e have held that a
person engages in protected oral communication [under the Federal

22

Wiretap Act] only if he exhibited 'an expectation of privacy that is both subjectively and objectively reasonable.'" *Id.* (quoting *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999)). Under the Federal Wiretap Act, to determine whether a person had a subjectively and objectively reasonable expectation of privacy, the person must have exhibited an actual expectation of privacy, and the expectation must be one that society recognizes as reasonable. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). The "obvious presence of the deputy in the bubble" during attorney-client conversations is "fatal to the claim that [Reed] had a reasonable expectation of privacy communicating with his attorney in the bubble." *See Butler*, 2023 WL 3910348, at *10 (using the same reasonable expectation of privacy test). Thus, Reed's conversations with his attorney in the bubble are not protected under the Federal Wiretap Act.

With regard to the Michigan eavesdropping statute, the conversation must be "private" to be protected. *Alexander*, 2014 WL 891043, at *5. A private conversation is defined as "a conversation that a person reasonably expects to be free from casual or hostile intrusion or surveillance." *People v. Stone*, 463 Mich. 558, 563 (2001). It is not

23

disputed that there was always a deputy present and that the camera was visible in the bubble. As a result, it is difficult to imagine that the bubble would be a place reasonably considered "free from casual or hostile intrusion or surveillance." *Id.* Therefore, Reed's conversations with his attorney in the bubble are also not protected under the Michigan eavesdropping statutes.

In the final portion of Objection IV, Reed challenges the R&R's legitimacy in its entirety:

> In conclusion, Judge Morris attempts to contradict Judge Levy's previous conclusions on her opinion and order granting in part, pg. 9 on the 4th, 6th Amend, Federal, and Michigan Wiretapping violations. Which were arguments already presented, making it improper. *Coleman-Bey, v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001).
> Since a civil action needs only to be proven by a preponderance of evidence, plaintiffs assert there is more than sufficient evidence to proceed to trial on the issues presented. As well as seeking felony charges against "both" defendants.

(ECF No. 51, PageID.601.)

This part of Reed's objection fails because objections that dispute the general correctness of the report and recommendation are improper. *Miller*, 50 F.3d at 380. Reed's objection also lacks merit because the legal standards that previously applied to Defendants' motion to

dismiss are different than those that apply to Defendants' motion for summary judgment, which is at issue here.[5] *See* Fed. R. Civ. P. 12(b)(6), 56. The R&R applies the correct legal standard in recommending that the Court grant Defendants' summary judgment motion. Therefore, Reed's objection does not identify an error in the R&R or provide a basis for the Court to not adopt the R&R.

Accordingly, Reed's fourth objection is denied.

### B. Reed Cannot Represent Wesley or Make Objections on Wesley's Behalf, so Wesley Waived his Right to Object to the R&R

In their response to Reed's objections, Defendants argue that Reed's objections cannot be attributed to both Reed and Wesley because Reed "is not an attorney." (ECF No. 52, PageID.605.) Defendants argue that, as a result, Wesley waives his objections to the R&R. The Court agrees with Defendants that Wesley has waived his right to object to the R&R.

---

[5] Regarding Reed's argument about "a preponderance of evidence" (ECF No. 51, PageID.601), Reed is correct that civil actions generally have a burden of proof that is lesser than a criminal action. *See Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276, 285 (1966) (describing the burden of proof "generally imposed in civil cases" as "a mere preponderance of the evidence"). However, that burden of proof is applicable in the trial context, not in the determination of summary judgment motions. *See supra* II. Legal Standard.

On the first page of the filing containing Reed's objections, Reed states that he "[n]ow comes . . . in pro per (on behalf of Anthony Wesley, Jr.)." (ECF No. 51, PageID.595.) Wesley – the other Plaintiff in the case, who also proceeds *pro se* – did not file a dispositive motion, a response to a dispositive motion, objections to the R&R, or a response to Reed's objections to the R&R. Nor has Wesley signed Reed's submissions related to Reed's or Defendants' summary judgment motion. According to the docket, Wesley was mailed copies of the relevant filings, including the R&R, and there is no indication that any of the mailings were returned to the Court as undeliverable.

To the extent Reed intends to make arguments in his summary judgment motion or in his objections on behalf of Wesley, Reed is not permitted to do so. "As a non-attorney, *pro se* plaintiff [Reed] cannot represent another *pro se* plaintiff." *Martin v. Fennville Pub. Sch. Dist.*, No. 1:21-cv-202, 2021 WL 5579204, at *1 (W.D. Mich. May 4, 2021); *see Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) ("Because, by definition, pro se means to appear on one's own behalf, a person may not appear pro se on another person's behalf in the other's cause of action." (internal citation omitted)). Under 28 U.S.C.

26

§ 1654, individuals may "plead and conduct their own cases personally" in federal court. But "that statute does not permit plaintiffs to appear *pro se* where interests other than their own are at stake." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). In other words, a *pro se* litigant "can't handle a case on behalf of anyone except himself." *Zanecki*, 576 F. App'x at 595 (quoting *Georgakis v. Ill. State. Univ.*, 722 F.3d 1074, 1077 (7th Cir. 2013)). As a result, the Court agrees with Defendants that Wesley has waived his right to object to the R&R by not filing his own objections. (ECF No. 52, PageID.605.)

When a party has not filed any timely objections, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b). In this case, the Court has carefully reviewed the R&R and concurs in the reasoning and result as it applies to Wesley's claims.[6] Accordingly, the Court adopts the R&R's recommendation to grant Defendants' motion for summary judgment to

---

[6] The Court notes that even if the Court were to attribute Reed's objections to Wesley, the outcome would be the same. Reed's objections lack merit and do not provide a basis for the Court to not adopt the R&R, as set forth above.

27

the extent the recommendation involves Wesley's claims against Defendants.[7]

## C. Reed's Motion for Summary Judgment

Reed filed a motion for summary judgment (ECF No. 40). The R&R does not specifically address Reed's summary judgment motion and recommends that it be denied "[s]ince [the R&R] recommend the Defendant's [sic] motion be granted." (ECF No. 50, PageID.593.) Reed did not object to the R&R's recommendation as to his summary judgment motion. (*See* ECF No. 51.)

The Court reviewed Reed's motion for summary judgment and concluded that the R&R's analysis of Defendants' motion for summary judgment addresses the arguments raised in Reed's motion as well. Additionally, Reed's motion for summary judgment is unsigned and is therefore not in compliance with Federal Rule of Civil Procedure 11(a)'s

---

[7] By failing to object to the R&R, Wesley has forfeited any further right of appeal. *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019); *see also Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019).

28

signature requirement.[8] Accordingly, the Court adopts the R&R's recommendation to deny Reed's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, Reed's objections are DENIED. The R&R (ECF No. 50) is ADOPTED.

Defendants' motion for summary judgment (ECF No. 44) is GRANTED. Reed's motion for summary judgment (ECF No. 40) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: September 29, 2023          s/Judith E. Levy
       Ann Arbor, Michigan        JUDITH E. LEVY
                                  United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2023.

                                  s/William Barkholz
                                  WILLIAM BARKHOLZ
                                  Case Manager

---

[8] Federal Rule of Civil Procedure 11(a) provides in relevant part that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number."